UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

**FILED**

00 JUN 28 PM 3: 57

U.S. DISTRICT COURT
N.D. OF ALABAMA

LOIS MURPHREE,                       )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )      Civil Action No. CV-99-S-0334-NW
                                     )
L & L SERVICES, INCORPORATED;  )
COLBERT COUNTY MEMORIAL        )
GARDENS, INC.; GREENVIEW       )
MEMORIAL PARK, INC.,           )
                                     )
        Defendants.                  )

**ENTERED**

JUN 2 8 2000

### MEMORANDUM OPINION

Plaintiff, Lois Murphree, was hired as a receptionist by Colbert County Memorial Gardens, Inc., during March of 1994. She then was sixty years of age. Her employment was terminated four years later, and plaintiff asserts that her age was a motivating factor. She brings a claim of disparate treatment under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, against Colbert County Memorial Gardens, Inc., her nominal employer, as well as defendants L & L Services, Incorporated, and Greenview Memorial Park, Inc.

This action presently is before the court on defendants' motions for summary judgment (doc. no. 25) and to strike (doc. no. 34). The fundamental issue raised by defendants' motion for summary judgment is the jurisdiction of this court. Colbert asserts that it has never employed twenty or more persons and,

support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could

draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment.  *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).  A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).  The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in the light most favorable to plaintiff.

## II. FACTUAL BACKGROUND

### A. The Relationships Among the Corporate Defendants

Colbert County Memorial Gardens, Inc. ("Colbert") owns and operates a funeral home and cemetery.[1]  It did not employ more than fourteen persons during the period of plaintiff's employment.[2]  Its officers consisted of Bobby Ray Love, President, Verna Brennan,

---

[1] Brennan's deposition (plaintiff's exhibit 1) at 22.

[2] Maples' affidavit ¶ 5.

4

Secretary/Treasurer, and Walter Andrews, Assistant Secretary/Treasurer.[3]  Its stockholders consisted of the following persons and entities:

| | |
|---|---|
| Bobby Ray Love | 25% |
| L & L Services, Inc. | 25% |
| John Martin Estate | 25% |
| Mr. and Mrs. James Lee | 12½% |
| H. M. Isbell | 12½% [4] |

At the time these shares were distributed, John Martin was Bobby Ray Love's attorney, James Lee was Love's accountant, and H. M. Isbell was Love's brother-in-law.[5]

L & L Services, Inc. ("L & L"), which owns 25% of Colbert's stock, is largely owned by Bobby Ray Love.  He owns 92% of its stock; the remaining 8% is owned by his brother-in-law, H. M. Isbell.[6]  L & L's corporate officers are: Bobby Ray Love, President; H. M. Isbell, Vice President; Bill Kinser, Vice President; Carl Condra, Vice President; and Walter Andrews, Secretary/Treasurer.[7]  Vernan Brennan (Colbert's secretary/treasurer) was Love's executive assistant at L & L,[8] and receives compensation from all three defendants.[9]  L & L is engaged in the business of providing payroll and bookkeeping  services to

---

[3] Love's affidavit ¶ 4.

[4] *Id.* ¶ 3.

[5] Brennan's deposition (plaintiff's exhibit 1) at 17-18.

[6] *Id.* ¶ 5.

[7] *Id.* ¶ 6.

[8] Brennan's deposition (plaintiff's exhibit 1) at 12.

[9] *Id.*; *see also* plaintiff's exhibit 2 at 25.

other corporations, many of which, including Colbert and Greenview Memorial Park, Inc. ("Greenview"), are owned at least in part by Bobby Ray Love.[10]  L & L charges a fee to all companies for the services it provides, including Colbert and Greenview.[11]

Greenview is a wholly-owned subsidiary of L & L.[12]  The officers of Greenview are identical to those of Colbert.[13]  Additionally, Greenview owns and maintains a funeral home and cemetery, but in a different county from Colbert.[14]

During most of plaintiff's employment, Colbert and Greenview had the same general manager for all cemetery and funeral operations, Roger Gasque.[15]  Gasque was paid by both corporations.[16]  Billy Richardson, the managing funeral director at Greenview,[17] was paid by L & L.[18]

During the period of plaintiff's employment, Greenview and Colbert also employed the same individual to oversee all groundskeeping responsibilities, Lynn Oliver,[19] but he was only on

---

[10] Brennan's deposition (plaintiff's exhibit 1) at 47-55.

[11] *Id.* at 58.

[12] Love's affidavit ¶ 7.

[13] *Id.* ¶ 8.

[14] *Id.* ¶ 11; Brennan's deposition (plaintiff's exhibit 1) at 27-28.

[15] Brennan's deposition (plaintiff's exhibit 1) at 24-25, 27-28, 31-33, 86; Gasque's deposition (plaintiff's exhibit 4) at 9-10.

[16] Brennan's deposition (plaintiff's exhibit 2) at 25.

[17] Richardson's deposition at 13, 15.

[18] *Id.* at 6.

[19] Brennan's deposition (plaintiff's exhibit 1) at 35.

Colbert's payroll.[20]  Although each funeral home employed separate groundskeeping personnel, Oliver would sometimes send Greenview employees to work at Colbert and vice versa.[21]

Greenview and Colbert also have shared employees and supplies to ensure that funerals were efficiently operated.  All funeral directors currently employed by Colbert and Greenview have worked at the other funeral home at some time during their employment.[22] Additionally, both funeral homes have shared embalmers[23] and other general funeral personnel.[24]  Moreover, employees can "transfer" their employment from Colbert to Greenview and vice versa, depending on each corporation's employment "need."[25]  Sometimes, a person has been buried in the cemetery owned by one of the corporations, but the funeral was conducted in the other.[26] Although Greenview and Colbert order separate funeral supplies, each has borrowed supplies from the other in the event of a shortage.[27]

Greenview and Colbert hired the same independent contractor, King and Associates, Inc. ("King"), to handle sales for each

---

[20] *Id.* at 43-44.

[21] Brennan's deposition (plaintiff's exhibit 1) at 37-38, 40-42.

[22] Richardson's deposition at 27.

[23] *Id.* at 48-49.

[24] *Id.* at 17-19.

[25] Brennan's deposition (plaintiff's exhibit 1) at 96.

[26] Richardson's deposition at 42-43.

[27] Brennan's deposition (plaintiff's exhibit 1) at 115; Gasque's deposition (plaintiff's exhibit 4) at 14.

funeral home.[28]  They each have separate contracts with King, but all calls for both corporations are made out of an office at Greenview.[29]

All three corporations have separate bank accounts, and hold separate shareholder and board of director meetings.[30]  The directors for each corporation are listed below:

| | |
|---|---|
| Colbert: | Bobby Ray Love<br>John C. Martin, Jr.<br>Tim Lee |
| Greenview: | Bobby Ray Love<br>Verna Brennan<br>Walter Andrews |
| L & L: | Bobby Ray Love<br>Bill Kinser<br>Walter Andrews<br>H. M. Isbell[31] |

All three corporations maintain offices in the same building in Sheffield, Alabama.[32]  The building is owned by L&L.[33]  Colbert and Greenview share a one-room office in the building;[34] Colbert pays $350 per month in rent to L & L, but Greenview does not pay any rent.[35]  Three individuals work in this office: Gasque, who is paid

---

[28] Brennan's deposition (plaintiff's exhibit 1) at 86-87; Gasque's deposition (plaintiff's exhibit 4) at 40.

[29] Gasque's deposition (plaintiff's exhibit 4) at 39.

[30] Love's affidavit ¶ 9.

[31] *Id.* ¶ 10.

[32] Brennan's deposition (plaintiff's exhibit 1) at 226-227.

[33] *Id.*

[34] *Id.* at 227.

[35] *Id.* at 231.

by both Colbert and Greenview, and two clerical employees.[36] Although the employees holding the two clerical positions changed during the course of plaintiff's employment, one employee generally is paid by Colbert, and the other by Greenview.[37] Both employees occasionally assist the other corporation, however, by answering telephone calls, verifying records,[38] and performing bookkeeping tasks.[39] Files on funerals and sales contracts for both Greenview and Colbert are kept in the office,[40] although personnel files are kept in a separate file room under lock and key.[41] Moreover, financial records for Greenview and Colbert may be accessed from a single computer, because they share a server and network.[42]

## B. The Specifics of Plaintiff's Employment

Plaintiff worked as Colbert's "receptionist" from March of 1994 to March of 1998. In that position she answered the telephone and completed paperwork.[43] During most of that period, plaintiff primarily worked under the supervision of Roger Gasque, the general manager for all cemetery and funeral operations at Colbert and Greenview. Gasque was transferred to another position in the early

---

[36] *Id.* at 227-229.

[37] *Id.*

[38] *Id.* at 229.

[39] Gasque's deposition (plaintiff's exhibit 4) at 30-31.

[40] Brennan's deposition (plaintiff's exhibit 1) at 120.

[41] *Id.* at 233-234.

[42] Gasque's deposition (plaintiff's exhibit 4) at 15-17.

[43] Plaintiff's deposition at 34.

part of 1998,[44] and the responsibilities of his previous position were divided, with the cemetery responsibilities at Colbert given to Len Oliver, while the funeral home responsibilities at Colbert were given to Kimberly Sherrill.[45] After the reassignment occurred, Sherrill became plaintiff's supervisor[46] and had the power to fire plaintiff;[47] but Love, as president of all three corporations, retained the authority to override Sherrill's decision.[48]

Len Oliver (whose promotion was limited to cemetery operations) told plaintiff in January of 1998 that she was now required to perform light housekeeping tasks, in addition to her receptionist duties.[49]  Sherrill later confirmed that plaintiff needed to "do a little ... dusting."[50]  (Prior to that time, plaintiff had never been asked to perform housekeeping duties,[51] because Colbert also employed a housekeeper, although at times she did so voluntarily.[52])

---

[44] Like so many other aspects of this case, the record regarding the position to which Gasque was transferred is not clear.  Gasque characterizes the new position as a transfer, motivated solely by his personal desire for a change of venue to ease the transition of his divorce, whereas Brennan is adamant that the new position was a demotion based on the sexual harassment allegations asserted against him by Sherrill.  In any event, no witness has adequately defined the scope of Gasque's duties and responsibilities in the new position, but it appears that he remains on the payroll of both Greenview and Colbert in some capacity.  (Brennan's deposition (plaintiff's exhibit 2) at 25, 41.)

[45] Brennan's deposition (plaintiff's exhibit 1) at 33.

[46] Love's affidavit ¶ 15.

[47] *Id.* ¶ 15.

[48] *Id.* ¶ 14.

[49] Plaintiff's deposition at 72-76.

[50] *Id.* at 76-78.

[51] *Id.* at 75.

[52] *Id.* at 44.

Plaintiff did not perform the housekeeping duties as she was instructed, because Gasque told her that Angela Bennett (Oliver's daughter[53]) was going to perform the housekeeping duties.[54]  Gasque also told plaintiff not to pay any attention to Oliver, "that he was not [her] boss."[55]  Sherrill was plaintiff's "boss," however, and on March 5, 1998, Sherrill informed plaintiff that her employment was being terminated.[56]  Specifically, Sherrill said that she "hate[d] to tell you [plaintiff] this, but it's my job ... [and] I have to do what ... [Love] tells me to do."[57]   Sherrill stated that plaintiff was being terminated due to a "work reduction."[58]  Sherrill now admits, however, that the real reason for firing plaintiff was her age.

> 3.   On or about March 5, 1998, I received a call from Verna Brennan.  Ms. Brennan told me to fire Ms. Murphree.  When I questioned this decision, she insisted that I fire the "old bag" today.  I asked Verna Brennan if she would terminate Ms. Murphree rather than having me do it.  She replied, "It's her ass or yours."  When I asked Ms. Brennan what I should tell Ms. Murphree about her termination, she told me to tell her we were cutting back.  During the past year the number of calls to the funeral home had increased, however.
>
> 4.   Further, Ms. Brennan told me to find someone younger

---

[53] *Id.* at 85.

[54] *Id.* at 80.

[55] *Id.* at 124.

[56] *Id.* at 150-151.

[57] *Id.* at 151.

[58] *Id.*

to replace Ms. Murphree.   Shortly thereafter I hired Denise Zak to replace Ms. Murphree.   Ms. Zak was approximately 35 years old when I hired her.   I was told by both Mr. Love and Ms. Brennan to hire Ms. Zak under housekeeping even though Ms. Zak was not being hired as a housekeeper.

. . .

6.   Prior to being told by Ms. Brennan to fire Ms. Murphree, Roger Gasque and Ms. Brennan discussed in my presence wanting to get rid of Ms. Murphree.   They discussed that they wanted to fire Ms. Murphree but did not have a reason.   They discussed that the termination of Ms. Murphree would have to be done carefully.   Mr. Gasque specifically stated that Ms. Murphree needed to be terminated because she was too old. [59]

On the date plaintiff's employment was terminated, she was sixty-four years old.[60]

Several months later, after plaintiff had filed her EEOC charge, Gasque telephoned plaintiff at home and offered her another job at Colbert, assisting with visitations.[61]   Plaintiff described that conversation as follows:

[Gasque] said he and Bob [Bobby Ray Love] had talked, and, Bob ... had him to call me, and he offered me my job back ... doing visitations, and he said I might be able to help out some in the evenings during visitations.   Well, ... I said, "No."   I [said], "... that's not the job I had."   He said, "That job has already been filled." [62]

Plaintiff   contends   that   Gasque's   offer   did   not   amount   to

---

[59] Sherrill's affidavit ¶¶ 3-4, 6.
[60] Plaintiff's deposition at 194.
[61] *Id.* at 269.
[62] *Id.* at 269-270.

reinstatement, because the duties in the proposed job were different from her former position, and with "visitation, you never know when you're going to be working or if you'll get any work at all...."[63]

### III. DISCUSSION

#### A. Defendants' Motion to Strike

Defendants move to strike several depositions submitted by plaintiff in opposition to their motion for summary judgment. Specifically, defendants contend that the depositions of Verna Brennan and Roger Gasque taken on December 13, 1999, and that of Bobby Ray Love, taken on December 14, 1999, should be excluded from consideration because they were taken in connection with a separate lawsuit. Defendants argue that the use of those depositions is prohibited by Rule 32 of the Federal Rules of Civil Procedure, because they were "taken without notice to the attorneys in this action and without their knowledge."[64]

In response, plaintiff clarifies the circumstances under which the contested depositions were taken. Although plaintiff admits the depositions were taken in a different lawsuit, plaintiff explains that all three defendants to this action also were named in the previous lawsuit, and they were represented by counsel,

---

[63] *Id.* at 271-272.

[64] Motion to strike (doc. no. 34) at 1 (emphasis supplied).

albeit different counsel from the present case. Plaintiff explains:

> Verna Brennan, Roger Gasque, and Bob Love were deposed three times, twice in this case and once in an unrelated case, *Kimberly R. Sherrill, et al. v. L & L Services, Inc., et al.,* [No. CV-99-J-1357-NW]. Though the *Sherrill* case is a sexual harassment case, the three defendants in Ms. Murphree's case are also defendants in that case, <u>and in both cases the defendants assert as a defense that they do not meet the statutory definition of an employer.</u>[65]

At the outset of discussion, the court observes that most of the testimony from the contested depositions that is relied on by plaintiff herein is duplicative of information disclosed by the same witnesses during depositions taken in the present case. To the extent that relevant information is contained in current depositions, therefore, the court need not consider a witness' prior testimony. Indeed, the only prior testimony this court finds to be original is contained in Love's contested deposition, and concerns plaintiff's argument that labor decisions were centralized for all three corporations under Love's control and authority. (*See* discussion *infra* at § III.B.(1)(b).)

The use of depositions in court proceedings is governed by Rule 32 of the Federal Rules of Civil Procedure:

> (a) **Use of Depositions.** At the trial or <u>upon the hearing of a motion</u> ... any part or all of a deposition, so far as <u>admissible under the rules of evidence</u> applied as though the

---

[65] Plaintiff's brief (doc. no. 35) at n.1 (<u>emphasis</u> added).

witness were then present and testifying, may be used
against <u>any party who was present **or** represented</u> at the
taking of the deposition or who had reasonable notice
thereof, in accordance with any of the following provisions:

. . .

> (2) <u>The deposition of a party</u> or of anyone who at the
> time of taking the deposition was an officer, director,
> or managing agent, or a person designated under Rule
> 30(b)(6) or 31(a) to testify on behalf of a public or
> private corporation, ... <u>may be used by an adverse party
> for any purpose</u>.

Fed. R. Civ. P. 32(a) (emphasis supplied).

To the extent defendants pivot their objections on the fact that
they were represented by different attorneys during at the prior
depositions, the court is unpersuaded. Rule 32 does not require
attendance by identical counsel at both proceedings; indeed, it
does not require the presence of representation at all. Rule 32(a)
is written in the disjunctive; a deposition "may be used against
any party who was <u>present</u> **or** <u>represented</u> at the taking of the
deposition...." Fed. R. Civ. P. 32(a) (emphasis supplied).
Accordingly, that argument is without merit.

This conclusion does not end the court's inquiry, however. When
interpreting Rule 32, courts have required the earlier action to
involve a "substantial identity of issues." *See Hub v. Sun Valley
Co.*, 682 F.2d 776, 778 (9th Cir. 1982) (citing cases requiring
issues to be substantially similar); *see also* 8A Wright, Miller &

15

Marcus, *Federal Practice and Procedure: Civil 2d* § 2150 (2d ed. 1994) (stating that "a substantial identity of issues, rather than precisely the same subject matter, is all that is required"). This requirement also has been satisfied here. Specifically, the court notes that both lawsuits involved claims of employment discrimination levied against Colbert, Greenview, and L & L. Although the claims admittedly were founded on different statutes (the ADEA here and Title VII in the previous action), both suits pivot upon the same issue, *i.e.*, whether defendants should be considered a "single employer." The presence of this congruency satisfies the requirement of Rule 32(a).

Finally, Rule 32 requires the testimony to be "admissible under the Rules of Evidence." Rule 801(d) of the Federal Rules of Evidence provides that a party's out-of-court statements are "not hearsay" when they are offered against that party.

> **(d) Statements which are not hearsay.** A statement is not hearsay if —
> . . .
>    **(2)   Admission by party-opponent.** The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or ... (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship....

Fed. R. Evid. 802(d)(2).

Defendants have objected to the admission of depositions taken by three different witnesses: Bobby R. Love, the president of all three corporations; Verna Brennan, the secretary/treasurer of Colbert and Greenview, and Love's executive assistant at L & L; and Roger Gasque, the general manager of cemetery and funeral operations for both Colbert and Greenview, and plaintiff's supervisor, during most of her employment. As this court has previously explained, the crucial information lies in Love's deposition. With regard to statements made by Love, there can be no doubt that he, as president and part-owner of all three corporations, had the authority to bind each entity with an admission under 803(d)(2). *See City of Tuscaloosa v. Hacros Chemicals, Inc.*, 158 F.3d 548, 557-558 (11th Cir. 1998) (concluding that statements made by former president of a company were admissible under Fed. R. Evid. 801(d)(2)(D), because witness "clearly was an 'agent or servant' of the company"). Accordingly, defendants' motion to strike is due to be denied to the extent the court has considered Love's prior deposition testimony. In all other respects, the motion is moot.

Defendants also oppose plaintiff's submission of Kimberly Sherrill's declaration, arguing that several statements contained therein are hearsay and should be excluded under Rule 802 of the

17

Federal Rules of Evidence.  Specifically, Sherrill testified that several derogatory statements were made to her about plaintiff's age by various supervisors employed with defendants.  For example, Verna Brennan told her to "fire the 'old bag' today" and "[i]t's her a-- or yours."[66]  In an earlier conversation between Brennan and Gasque, to which Sherrill was privy, "Gasque specifically stated that Ms. Murphree needed to be terminated because she was too old."[67]

In ruling on summary judgment, this court must consider only evidence that may be reduced to admissible form at trial.  *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999).  The Eleventh Circuit has explained this standard, as follows:

> We believe that the courts have used the phrases "reduced to admissible evidence at trial" and "reduced to admissible form" to explain that the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose.  For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence).

*Macuba*, 193 F.3d at 1323-24.  In determining whether statements are reducible to admissible form, the court is again called upon to consider Rule 801(d)(2) of the Federal Rules of Evidence.  The pertinent inquiry is whether the statements made by Brennan and

---

[66] Plaintiff's exhibit 12 ¶ 4.

[67] *Id.* ¶ 6.

Gasque can bind Colbert as an admission by a party-opponent.

Brennan satisfies the elements of Rules 801(d)(2)(C) and (d)(2)(D). Specifically, Brennan is the secretary/treasurer of both Colbert and Greenview, as well as Love's executive assistant. As an officer of these companies, she had such intimate knowledge of their operations that she was designated as a corporate representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure.[68] Moreover, Brennan's statements demonstrate that she was intimately involved in the decision to terminate plaintiff's employment. Indeed, Sherrill's affidavit reveals that Brennan directed her to fire plaintiff and threatened Sherrill's job if she refused to do so. Accordingly, defendants cannot successfully argue that her prior testimony does not bind them as an admission. *See Harcros Chemicals, Inc.*, 158 F.3d at 557 n.9 (noting that "senior officers of a corporation normally are agents and servants of the corporation").

The admissibility of Gasque's statement admittedly is a closer call. Indeed, for Gasque's statement to be admissible, it must fall under the exception enumerated Rule 801(d)(2)(D), and must qualify as "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during

---

[68] *See* defendants' evidentiary submission (doc. no. 30) at n.1; *see also* plaintiff's exhibit 1 (doc. no. 33) at 236-237.

the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). To establish the admissibility of Gasque's statement, three things must be shown: (1) an agency or employment relationship existed between the declarant and the party; (2) the statement was made while the agency or employment relationship continued; and (3) the statement relates to a matter within the scope of the agency or employment. *See* Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 801.23[1], at 801-54 to 801-56 (2d ed. 1999).

At all times pertinent to plaintiff's employment, Gasque was an employee of Colbert and Greenview and, thus, the first two factors have been satisfied. Indeed, for most of plaintiff's employment, Gasque was plaintiff's immediate supervisor; however, he was transferred to another position in early 1998,[69] and Sherrill was hired as his replacement.[70] Defendants argue that at the time Gasque made the statement to Sherrill, he "was not an officer, supervisor, or director of Colbert Memorial or Greenview Memorial ... nor did he supervise any employees."[71] In other words, defendants argue that Gasque's statement was not made in the scope of his employment as supervisor and, accordingly, does not bind them.

The record, however, contains evidence to the contrary. First,

---

[69] Brennan's deposition (plaintiff's exhibit 1) at 36.

[70] *Id.* at 33.

[71] Motion to strike (doc. no. 34) at n.2.

Brennan testified in deposition that Sherrill wanted to fire plaintiff because "she was calling [Gasque] at home at night and undermining [Sherrill]."[72] This statement, when construed in the light most favorable to plaintiff, lends support to the belief that Gasque had some authority over Sherrill even after he was transferred. Moreover, after plaintiff was fired, it was Gasque who called plaintiff at home and offered her a job assisting with visitation.[73] Therefore, even after Gasque was transferred to another position, he still participated in employment decisions at Colbert. *See Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1456 (11th Cir. 1997) (concluding that under Rule 801(d)(2)(D), "statements made by a supervisory official who plays some role in the decision making process are generally admissible"). Accordingly, the court finds that defendants' motion to strike is due to be denied in its entirety.

## B. Defendants' Motion for Summary Judgment

Defendants argue that plaintiff's complaint is due to be dismissed for two reasons: Colbert does not meet the definition of "employer" contained in the ADEA; and plaintiff failed to produce either direct or circumstantial evidence of age discrimination.

---

[72] Brennan's deposition (plaintiff's exhibit 1) at 246.

[73] Brennan's deposition (plaintiff's exhibit 2) at 41-42; Gasque's deposition (plaintiff's exhibit 5) at 9-11.

### 1.    The definition of "employer"

Congress enacted the Age Discrimination in Employment Act in 1967 for the purpose of protecting older Americans from discrimination in the workplace.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *see* 29 U.S.C. §§ 621(b), 623.  The Act make it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1).

The ADEA's provisions are not implicated, however, unless the plaintiff's employer meets the following criteria:

> The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year....

29 U.S.C. § 630(b).    Here, it is undisputed that plaintiff's nominal employer, Colbert, did not employ more than fourteen employees at any time during plaintiff's term of employment.[74] Nonetheless, plaintiff contends that Colbert, Greenview, and L & L should be considered a "single employer," and the employees of all companies    included    for    purposes    of    meeting    the    ADEA's

---

[74] Plaintiff's brief (doc. no. 35). At 1-2.

jurisdictional requirement.[75]   At a minimum, plaintiff asserts "there are material fact issues concerning whether all three defendants are operated as a single employer."[76]  Relying on *Garcia v. Copenhaver*, 104 F.3d 1256 (11th Cir. 1997), plaintiff contends that "the issue of whether a defendant is an employer must be submitted to the jury."[77]

Defendants dispute plaintiff's argument.  Indeed, the primary thrust of defendants' motion for summary judgment is based on what it contends is "undisputed evidence" that the operations of these three entities are not sufficiently centralized and interrelated to warrant integration.  Therefore, defendants contend that this court lacks subject matter jurisdiction over plaintiff's lawsuit.

The court's initial task is to determine whether it must decide the "single employer" issue as a matter of law, or if the resolution of this question is one for the jury, as the ultimate finder of fact.  This determination is not an easy one; indeed, the

---

[75] Plaintiff does not assert in her brief that the "joint employer" test or the "agency" test applies to the facts of her case, although she argued both their applicability in her amended complaint.  (Amended Complaint (doc. no. 15) ¶ 8.)  Defendants moved for summary judgment on all possible theories, arguing that the test discussed by the Eleventh Circuit in *Virgo v. Riviera Beach Association*, 30 F.3d 1350, 1359 (11th Cir. 1994), precluded plaintiff from advancing this argument.  Plaintiff failed to respond to defendants' contention, however, resting her entire legal discussion on the argument that defendants are integrated enterprises.   Therefore, the court concludes that plaintiff has abandoned this theory, and limits its discussion to the other theory relied on by plaintiff.

[76] Plaintiff's brief at 1.

[77] *Id.* at 11.

approach taken by the Eleventh Circuit appears to have varied over time. *Compare McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987) (reversing the district judge's decision in a Title VII case to grant summary judgment in favor of employer, and concluding that employee "presented sufficient evidence to create a genuine issue concerning whether [companies] should be treated as a single entity"), and *Garcia*, 104 F.3d at 1264 (holding that the issue of "employer" status is a substantive element of an ADEA claim, admittedly intertwined with the question of jurisdiction, but nevertheless a question that should be resolved by the jury), *with Scarfo v. Ginsberg*, 175 F.3d 957, 961 (11th Cir. 1999) (determining that the reasoning in *Garcia* "is inapposite," noting that *Garcia* involved an ADEA claim and not a Title VII claim, and concluding that "[w]hen faced with factual disputes regarding subject matter jurisdiction, the district court serves as the fact-finder and may weigh the evidence, provided the challenge to subject matter jurisdiction does not implicate an element of the cause of action. ... Because subject matter jurisdiction addresses the power of a court to hear a case, a jury does not resolve factual issues regarding subject matter jurisdiction. Instead, that duty is for the court").

For the following reasons, this court elects to hew to the line

24

marked by *Garcia*.  First, *Garcia*, like the present case, involved

a claim of age discrimination under the ADEA.   Although courts

often rely on Title VII precedent when construing actions brought

under the ADEA (and vice versa), the *Garcia* court specifically

explained that "a plaintiff can only recover [under the ADEA] if

[s]he is able to prove an 'employer' discriminated against him/her

on the basis of age."  *Garcia*, 104 F.3d at 1263.  Plainly speaking,

the *Garcia* court held that defendants' status as "employers"

implicates an element of the ADEA cause of action.

> In other words, it seems the section of ADEA that provides
> the substantive relief, § 623, is intertwined and dependent
> on the section of ADEA that defines the scope of the act, §
> 630.  An analysis of the two sections is circular as the two
> sections are dependent on one another.  For a plaintiff to
> recover under the act, plaintiff must prove as part of his
> claim that an "employer" discriminated against him/her.  To
> prove that a defendant is an "employer," a plaintiff must
> satisfy the definition of "employer" set forth in § 630(b).
> . . .
> Thus, the ultimate conclusion reached by our holding that
> whether or not one is an "employer" is an element of an ADEA
> claim, is the belief that the jury, rather than the judge,
> should decide the disputed question. . . .

*Garcia*, 104 F.3d at 1263.  Second, this court is bound to follow

the oldest precedent, in the case of a conflict between panel

decisions: it has long been the "rule of this circuit that [a

district court] cannot disregard the precedent set by a prior

panel, even though [it] perceive[s] error in the precedent.  Absent

an intervening Supreme Court decision which changes the law, only

the *en banc* court can make the change." *Wilson v. Taylor*, 658 F.2d 1021, 1034 (5th Cir. Unit B Oct. 13, 1981)[78]; *see also Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000) (noting that "where two prior panel decisions conflict we are bound to follow the oldest one"); *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (*en banc*) (observing that "[w]hen there is no method for reconciling an intracircuit conflict of authority, 'the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue *en banc*'").

Accordingly, this court will not decide the "single employer" issue as a matter of law, but concludes that, based on the evidence discussed below, the ultimate decision is a matter for determination by the jury.

The Eleventh Circuit recently summarized the theories available for aggregating the number of employees of legally distinct entities:

> We accord a liberal construction to the term "employer" under Title VII. ... In keeping with this liberal construction, we sometimes look beyond the nominal independence of an entity and ask whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's "employer" comes within the coverage of Title VII.
>
> We have identified three circumstances in which it is

---

[78] In Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the Unit B panel of the former Fifth Circuit handed down after September 30, 1981.

> appropriate to aggregate multiple entities for the purposes
> of counting employees.  First, where two ostensibly separate
> entities are "'highly integrated with respect to ownership
> and operations,'" we may count them together under Title
> VII. ...  This is the "single employer" or "integrated
> enterprise" test.  Second, where two entities contract with
> each other for the performance of some task, and one company
> retains sufficient control over the terms and conditions of
> employment of the other company's employees, we may treat
> the entities as "joint employers" and aggregate them. ...
> This is the "joint employer" test.  Third, where an employer
> delegates sufficient control of some traditional rights over
> employees to a third party, we may treat the third party as
> an agent of the employer and aggregate the two when counting
> employees. ...  This is the "agency" test. ...

*Lyes v. City of Riviera Beach, Florida*, 166 F.3d 1332, 1341  (11th

Cir. 1999) (citations omitted).

Here, plaintiff relies on the "integrated enterprise" test and,

accordingly, must prove that all three entities are "highly

integrated with respect to ownership and operations," before they

may be viewed as a "single employer."  *McKenzie*, 834 F.2d at 933.

To determine whether two or more legally distinct entities should

be considered a "single employer," courts in this circuit utilize

the standard developed by the National Labor Relations Board in

cases arising under the National Labor Relations Act.  *See*

*McKenzie*, 834 F.2d at 933.  Under the NLRB standard, courts look to

the following four criteria: (1) interrelation of operations;  (2)

centralized control of labor relations; (3) common management;  and

(4) common ownership or financial control. *McKenzie*, 834 F.2d at

27

933.   The focal point of the court's inquiry is "the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." *Llampallas v. Mini-Circuits, Lab., Inc.*, 163 F.3d 1236, 1244 (11th Cir. 1998).

### a.   Interrelation of operations

In determining whether two or more ostensibly separate entities are substantially interrelated, courts have considered whether the entities have a "significant interchange of employees, high-level supervisors, or equipment." *Joint Council of Teamsters No. 42,* 225 NLRB 209 (1976); *see also Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726 (N.D. Ala. 1981) (Acker, J.).   Other courts have considered these factors: "combined accounting records, bank accounts, lines of credit, payroll preparation, switchboards, telephone numbers, or offices." *Western Union Corp. v. United Telegraph Workers*, 224 NLRB 274, 277 (1976); *see also Fike*, 514 F. Supp. at 726; *Walker v. Boys and Girls Club of America*, 38 F.Supp.2d 1326, 1331 (M.D. Ala. 1999) (Albritton, J.) (applying *Western Union* factors); *Thornton v. Mercantile Stores Company, Inc.*, 13 F.Supp.2d 1282, 1291-1292 (M.D. Ala. 1998) (DeMent, J.) (same).

After reviewing the evidence in the light most favorable to plaintiff, the court finds sufficient evidence that defendants'

operations are interrelated.   Greenview and Colbert operate the same type of businesses, a cemetery and funeral home, and both share employees, including groundskeepers, clerical general funeral staff, as well as various supplies.   Both share an office in a building owned by L & L, although only Colbert pays rent on the space, and employees in that office perform work for both companies.   Moreover, Brennan, Gasque, Oliver, and Richardson are employed by more than one entity.   Gasque receives compensation from Greenview and Colbert;  and Brennan receives compensation from all three.

### b.   Centralized control of labor relations

"It is well settled that the 'control' required to meet the test of centralized control of labor relations is not potential control, but rather actual and active control of day-to-day labor practices." *Fike*, 514 F. Supp. at 727.   Additionally, this second factor is often accorded greater weight than the others. *See Fike*, 514 F. Supp. at 727; *Thornton*, 13 F. Supp. 2d at 1291; see *also* Barbara Lindermann & Paul Grossman, *Employment Discrimination Law* at 1310 (3d ed. 1996).

Plaintiff has presented evidence that Bobby Ray Love was the ultimate decision-maker with regard to employment decisions in all three corporations.   In his own affidavit, Love admits that "[a]s

President of Greenview Memorial and Colbert Memorial, I have the discretion to hire, fire, and discipline the Managing Director."[79] Although Love denies that he plays "an active role in the day-to-day operations of each company,"[80] other employees have admitted to consulting Love before making hiring decisions.[81]  Moreover, Love testified that he interviewed Sherrill before she was hired and, even though Gasque had offered her a salary of $550 a week, he raised the offer to $600 a week.[82] Additionally, when three Colbert employees tendered their resignations, Love accepted their resignations by letter, typed on L & L letterhead, in his capacity of "president."[83]  Although plaintiff's evidence of centralized control of labor relations is not as strong as her evidence of the other factors, it is sufficient, when considered in combination, to support submission of the issue to the jury.

### c.   Common Management and common ownership

Finally, it is undisputed that all three corporations are owned, at least in part (if not primarily), by Bobby Ray Love.  Moreover, Love is the president of each and heads the boards of directors. Additionally, the officers of Colbert and Greenview are identical,

---

[79] Love's affidavit (doc. no. 40) ¶ 14.

[80] *Id.*

[81] Gasque's deposition (plaintiff's exhibit 4) at 21; Richardson's deposition at 45.

[82] Love's deposition (plaintiff's exhibit 9) at 175-176.

[83] *Id.* at 218-219.

and Greenview is a wholly-owned subsidiary of L & L.   Finally, Verna Brennan — the secretary/treasurer of Colbert and Greenview, Love's executive assistant, and a director of Greenview — is the person who directed Sherrill to fire plaintiff.   These facts indicate that the three corporations had common management and ownership, and lend credibility to plaintiff's assertion that they operated as a single employer.

Therefore, due to the existence of material issues of fact, this court declines to enter summary judgment in favor of defendants. Plaintiff is entitled to an opportunity to convince the jury that defendants should be considered a single employer under the ADEA.

### 2.   Plaintiff's evidence of age discrimination

In the alternative, defendants contend that plaintiff has failed to present either direct or circumstantial evidence of age discrimination.   The court disagrees.

In ADEA cases, the plaintiff has the ultimate burden of proving that age was a determinative factor in the employer's adverse employment decision.   *See, e.g., Verbraeken v. Westinghouse Electric Corporation*, 881 F.2d 1041, 1045 (11th Cir. 1989).   A plaintiff may establish that age was a determining factor with direct evidence, circumstantial evidence, or statistical evidence. *See Alphin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1500 (11th

31

Cir. 1991).   The evaluation of a plaintiff's evidence of the employer's intent differs, depending upon which form of proof is used.

Direct evidence is evidence which, if believed, proves the existence of a fact in issue without the need of an inference or a presumption.   *See, e.g., Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require ... an inferential leap between fact and conclusion."); *Merritt v. Dillard Paper Co.*, 120 F.2d 1181, 1189 (11th Cir. 1997) (defining direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption"); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (same); *Black's Law Dictionary* 577 (7th ed. 1999) (defining direct evidence as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.").   The Eleventh Circuit provided some examples to mark the cleavage between direct and circumstantial evidence in *Rollins*:

> One example of direct evidence would be a scrap of paper saying, "Fire Rollins — she is too old." *See Williams* [v. *General Motors Corp.*], 656 F.2d [120,] at 130 [(5th Cir. Unit B 1981)].   This court found that there was direct evidence of discrimination when an INS reviewing committee set aside a female applicant's file without reviewing it because the two men knew the director would not consider hiring a woman investigator. *Lewis v. Smith*, 731 F.2d 1535

(11th Cir. 1984).  In these instances, the fact that the
evidence exists, by itself, proves the discrimination.  The
evidence at issue here, on the other hand, suggests
discrimination.  The trier of fact must infer discrimination
based on the evidence.  By definition, then, it is
circumstantial evidence.

*Rollins*, 833 F.2d at 1528 n.6.

Direct evidence has the greatest probative value.  When a
plaintiff establishes by direct evidence that a contested
employment decision was motivated by a discriminatory animus, the
employer "may avoid a finding of liability only by proving by a
preponderance of the evidence that it would have made the same
decision even if it had not taken the plaintiff's [age] into
account."  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109
S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989) (Title VII gender
discrimination claim); *see also, e.g., Carter v. Three Springs
Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998); *Haynes
v. W.C. Caye and Co., Inc.*, 52 F.3d 928, 931 n.8 (11th Cir. 1995).
In other words, "defendant must prove that there was a separate,
[age] neutral reason for its [contested employment decision]."
*E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 925 (11th Cir.
1990).

In a direct evidence case, the plaintiff must produce direct
testimony that the employer acted with discriminatory
motive, and must convince the trier of fact to accept the
testimony.  If the plaintiff produces such evidence and the
trier of fact believes it, the defendant must prove by a

33

preponderance of the evidence that the defendant would have reached the same decision without the factor proved.   In other words, the employer must prove that even if it had not taken race into account, it would have come to the same decision.

*Id.*, 901 F.2d at 923 (citations omitted).[84]

Thus, the characterization of evidence as direct "dramatically affects the allocation of the evidentiary burdens." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998).   "When there is direct evidence that discrimination was a motivating factor in the challenged employment decision, the appropriate analysis is different from that employed in a case where only circumstantial evidence is available." *Trotter v. Board of Trustees of the University of Alabama*, 91 F.3d 1449, 1453 (11th Cir. 1996) (citing *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1556 (11th Cir. 1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984); *Haynes v. W.C. Caye and Co., Inc.*, 52 F.3d 928, 931 (11th Cir. 1995)).   "By producing direct evidence, the plaintiff effectively shifts the burden of proof to the defendant, who must then show that there was no discrimination.   It is rare that direct evidence of discrimination exists, however." *Rollins*

---

[84]   *See also, e.g.*, Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985) ("'Once an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor.'") (*quoting* Lee v. Russell County Board of Education, 684 F.2d 769, 774 (11th Cir. 1982)).

*v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987).[85]

Statements of decisionmakers directly related to the contested employment action constitute direct evidence of discrimination. *See, e.g., Carter*, 132 F.3d at 641 ("[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.") (quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990) (internal quotation marks omitted)); *Trotter*, 91 F.3d at 1453 ("Statements indicating ... bias on the part of a decisionmaker in an employment setting can constitute direct evidence of ... discrimination in Title VII cases.") (citations omitted); *Bell*, 715 F.2d 1552 (plaintiff's supervisor voiced bias to plaintiff at the very moment he rejected plaintiff for promotion); *Thompkins v. Morris Brown College*, 752 F.2d 558, 561, 563-64 (11th Cir. 1985) (statement by decisionmaker that he saw no need for a woman to have a second job constituted direct evidence of discriminatory intent).

---

[85] *See also, e.g.*, Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 950 (11th Cir. 1991) (§ 1981 case noting that, "seldom is there direct evidence of intentional racial discrimination"); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1981) (stating that *McDonnell Douglas* test is designed to ease burdens on discrimination plaintiffs when direct evidence of discrimination is lacking); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 11184 (11th Cir. 1984) ("Because direct evidence of discriminatory animus can be difficult to produce, it is often appropriate to analyze circumstantial evidence of discrimination according to the three-step procedure first developed in *McDonnell Douglas Corp. v. Green*, ....").

On the other hand, statements that do "not relate directly to the decision" in dispute, or "statements that are open to more than one interpretation do not constitute direct evidence of ... discrimination." *Carter*, 132 F.3d at 642; *see also Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1083 n.2 (11th Cir. 1996)(statements that could "have more than one possible meaning" are not direct evidence of discrimination). "Only the most blatant remarks, whose intent could only be to discriminate on the basis of [an impermissible factor] constitute direct evidence." *Coats v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1992). Evidence merely suggesting discrimination is not sufficient. *See Earley v. Champion International Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990).

Moreover, "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself" do not "justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. at 1804-05 (O'Connor, J., concurring).

For example, in *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920 (11th Cir. 1990), the employer's general manager (Robert Raymond) allegedly said "if [Alton Packaging] was his company, he wouldn't

36

hire any black people." *Id.*, 901 F.2d at 922.  In addition, the production manager (Robert Diesen) allegedly yelled at one black employee "--- ---- it, you people can't do a ------- thing right." *Id.*  The Eleventh Circuit held the former statement to be direct evidence of discriminatory intent by a decisionmaker, but the latter nothing more than a "stray remark," "unrelated to the decisional process itself."

> *Price Waterhouse* does not define direct evidence.  In her concurrence, however, Justice O'Connor stated that "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself" do not "justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Price Waterhouse*, 109 S.Ct. at 1804.  <u>Raymond's statement</u> that if it were his company he would not hire blacks does not fall into any of these categories.  <u>Raymond</u> was a decisionmaker, and he made the remark in reference to hiring. [On the other hand,] <u>Diesen's statement</u> is the kind of stray remark contemplated by Justice O'Connor, but does not affect the outcome.  <u>Raymond's statement</u> constituted direct evidence of discrimination which Alton was required to rebut by a preponderance of the evidence.  The district court erred when it failed to place this burden on Alton.

*Id.* (emphasis added).

Here, plaintiff has produced evidence of direct discrimination. Sherrill averred that Verna Brennan directed her to "fire the 'old bag' today," and when Sherrill demurred, Brennan threatened "[i]t's her ass or yours."[86]  Sherrill also testified that she was privy to

---

[86] Sherrill's affidavit ¶ 3.

a conversation between Gasque and Brennan in which Gasque said that plaintiff "needed to be terminated because she was too old."[87] These statements were directly related in time and subject-matter to plaintiff's termination, they were made by supervisors who had the authority to terminate her employment, and their meaning is unmistakable.[88]

## IV. CONCLUSION

Accordingly, defendants' motion for summary judgment is due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 28th day of June, 2000.

_____
United States District Judge

---

[87] *Id.* ¶ 6.

[88] "Only the most blatant remarks, whose intent could only be to discriminate on the basis of age constitute direct evidence." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1226 (11th Cir. 1992).