```
                UNITED STATES DISTRICT COURT            FILED
                NORTHERN DISTRICT OF ALABAMA         00 SEP 28 AM 8:03
                   NORTHWESTERN DIVISION
                                                    U.S. DISTRICT COURT
LOIS MURPHREE,                    )                   N.D. OF ALABAMA
                                  )
     Plaintiff,                   )
                                  )
vs.                               )   Civil Action No. CV-99-S-0334-NW
                                  )
L & L SERVICES, INCORPORATED;     )
COLBERT COUNTY MEMORIAL           )       ENTERED
GARDENS, INC.; GREENVIEW          )
MEMORIAL PARK, INC.,              )       SEP 2    2000
                                  )
     Defendants.                  )
```

### MEMORANDUM OPINION

This action is before the court on defendant's motion to reconsider the order entered on August 18, 2000 (doc. no. 57), granting plaintiff's motion in limine (doc. no. 54), and thereby precluding defendants from raising the affirmative defense of failure to mitigate damages. The same order also denied defendant's motion for leave to amend their answer (doc. no. 56), to specifically plead such affirmative defense.

### I. INTRODUCTION

One of the purposes of the Age Discrimination in Employment Act of 1967 (ADEA)[1] — like the other federal statutes proscribing discrimination in the workplace — is that of making "persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-

---
[1] 29 U.S.C. § 621 et seq.



19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (Title VII case). Consistent with that concept, a successful plaintiff "is presumptively entitled to back pay from the date of the discriminatory discharge until the date of judgment, unless the victim obtains or could have obtained substantially equivalent work before that time." *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1251 (11th Cir. 1997) (ADEA case) (citing 29 U.S.C. § 626(b), and, *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 794 (3d Cir. 1985) (holding that back pay is "a mandatory element of damages" under the ADEA)). Even so, certain events can cut off the accrual of back pay. One such event is a plaintiff's failure to be reasonably diligent in seeking substantially equivalent employment. *See, e.g., Massey Yardley*, 117 F.3d at 1251-52 (holding that, while an ADEA plaintiff "has a duty to mitigate damages by being reasonably diligent in seeking substantially equivalent employment, the burden of proving lack of diligence is upon the employer").

Another such event is a plaintiff's refusal to accept her former employer's unconditional offer of reinstatement. *See Stanfield v. Answering Service, Inc.*, 867 F.2d 1290 (11th Cir. 1989).

> This conclusion is consistent with the purposes of the ADEA. The purposes of the Act are "to promote employment

> of older persons based on their ability rather than their age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C.A. § 621(b). In *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the Supreme Court stated that the laws should be designed to encourage defendant employers to make unconditional, curative job offers to claimants in an effort to end discrimination quickly. *Ford Motor Co. v. EEOC*, 458 U.S. at 228, 102 S.Ct. at 3063. Although the *Ford* decision addressed the duty to mitigate damages under Title VII, it is instructive as a guide in interpreting the same duty under the ADEA. *See also Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir. 1982) (employee discharged in violation of ADEA must use reasonable efforts to mitigate his damages). Thus, it is consistent with the Act to encourage employers to make good-faith offers to claimants. Once such an offer is made, claimants forfeit their right to [the accrual of back-pay and to claim court-ordered] reinstatement unless their refusal of the employer's offer is reasonable. A contrary holding would allow an employee to avoid her obligation to mitigate damages by holding out for a court-ordered reinstatement. ...

*Stanfield*, 867 F.2d at 1296; *see also Lewis Grocer Co. v. Holloway*, 874 F.2d 1008, 1012 (5th Cir. 1989);[2] *Coates v. National Cash Register Co.*, 433 F. Supp. 655 (W.D. Va. 1977).

The foregoing principles are the basis for defendants' motion

---

[2] The action in Lewis Grocer Co. v. Holloway, 874 F.2d 1008 (5th Cir. 1989), was based upon the Surface Transportation Assistance Act of 1982, 49 U.S.C.App. § 2305(b). Even so, the Fifth Circuit applied principles developed in the context of claims based upon Title VII of the Civil Rights Act of 1964, which the court "believe[d] sufficiently analogous to provide guidance in the case at bar," and concluded that "an unconditional offer of reinstatement ordinarily tolls an employer's back-pay liability," and "also precludes a subsequent order of reinstatement." *Id.* at 1012 (citations omitted).

for reconsideration. In summary, defendants argue that they extended an unconditional offer of reinstatement to plaintiff during August of 1998, but she rejected the offer and, hence, failed to mitigate her damages. Plaintiff, on the other hand, contends that defendants' offer of reinstatement was not made until well into September of 1998, and that the position offered already had been filled by another person. Thus, plaintiff asserts that the "offer" was neither bona fide nor made in good faith.

## II. SUMMARY OF RELEVANT FACTS

Plaintiff, Lois Murphree, was hired as a receptionist by Colbert County Memorial Gardens, Inc. ("Colbert"), during March of 1994. She then was sixty years of age. Her employment was terminated four years later, and plaintiff contends that her age was a motivating factor. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 20, 1998, and subsequently filed suit against Colbert, her nominal employer, as well as defendants L & L Services, Inc., and Greenview Memorial Park, Inc. ("Greenview"), on February 16, 1999.

### A. Defendants' Specific Contentions

Defendants specifically contend that in late August 1998, plaintiff was offered the opportunity to work for Colbert in

response to a sudden employee shortage.[3] Defendants claim that on August 25, 1998, four Colbert employees — Kim Sherrill, Robert Spruell, Angie Bennet, and Denise Zak — resigned. In support of this assertion, defendants have offered the resigning employees' letters of resignation, their time sheets, and correspondence with the Alabama Department of Industrial Relations, all of which indicate that the four individuals were no longer employed after August 25, 1998.

Bob Love, president and shareholder of all three defendant corporations, testified that on August 25, 1998, — the same day that the four employees resigned — he instructed Roger Gasque, general manager of operations for Colbert and Greenview, to telephone plaintiff and inquire whether she would be interested in returning to work.[4]

Gasque testified that he did call plaintiff on or about August 28, 1998, that he told her several Colbert employees had resigned, and asked whether she would be willing to come back to the same job position she had held before her termination.[5] Plaintiff responded

---

[3] Plaintiff's evidentiary submission (doc. no. 33), Exhibit 2 (Brennan deposition), at 41.

[4] Plaintiff's evidentiary submission (doc. no. 33), Exhibit 8 (Love deposition), at 32-33, 55.

[5] Plaintiff's evidentiary submission (doc. no. 33), Exhibit 5 (Gasque deposition), at 7-9, and 11.

that she would think about his offer and call him back. Later that same day, however, plaintiff's present attorney telephoned Gasque and instructed him to not have any further direct contact with his client.[6]

### B. Plaintiff's Response

Plaintiff contends that, after she was fired in February of 1998, she was replaced by Denise Zak.[7] Zak was one of the four Colbert employees who resigned on August 25, 1998. Plaintiff further asserts that defendants hired Tabitha Watkins to fill the position vacated by Ms. Zak on September 14, 1998,[8] and that defendant's offer of reinstatement occurred _after_ that date. As support for this contention, plaintiff's present attorney has produced his time sheets, indicating that the telephone conversation in which he instructed Gasque to have no further direct contact with his client occurred on September 22, 1998, more than a week after defendants had hired Tabitha Watkins.[9]

---

[6] _Id._

[7] Plaintiff's evidentiary submission (doc. no. 33), Exhibit 2 (Brennan deposition), at 14, 34.

[8] Plaintiff's evidentiary submission (doc. no. 33), Exhibit 8 (Love deposition), at 44.

[9] It should be noted that plaintiff's attorney's time records indicate that plaintiff called her attorney regarding the conversation with Gasque on September 18, 1998. If Gasque's statement is believed, namely, that his conversation with plaintiff and her attorney occurred on the same day, then it would follow that the offer of reinstatement was made on September 18, _not_ September 22, 1998. Even so, that earlier date still is four days _after_ the date on which plaintiff contends that Tabitha Watkins was hired to fill her former position at Colbert.

Finally, plaintiff testified that her previous job position was not offered to her, stating that Gasque said "that job has already been filled."[10] Instead, plaintiff asserts that Gasque asked her whether she was interested in assisting with visitations at the funeral home. Plaintiff claims that she refused, because assisting with visitations had no stability: "you never know when you're going to be working or if you'll get any work at all."[11]

The events occurring after the date of plaintiff's termination thus are fiercely contested. Clearly, there are genuine issues of material facts: *e.g.*, the date upon which an offer of reinstatement was extended to plaintiff; whether the position offered was the same position previously held by plaintiff, or substantially comparable; and, whether such offer was made in good faith.

It also is evident that the testimony of plaintiff's present attorney would be necessary, if not determinative, on at least the first of those issues.

### III. DISCUSSION

Failing to plead an affirmative defense generally results in the waiver of that defense and its exclusion from the case. *See*

---

[10] Plaintiff's evidentiary submission (doc. no. 33), Exhibit 11 (Plaintiff's deposition), at 270.

[11] *Id.* at 272, 282.

*generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1278 at 477 (1990).

The Eleventh Circuit has held that a plaintiff's failure to mitigate damages is an affirmative defense in an ADEA action. *Munoz v. Oceanside Resorts, Inc.*, 2000 WL 1210669, at *5 (11th Cir. Aug. 25, 2000). As such, it falls under Rule 8(c) of the Federal Rules of Civil Procedure, which provides that all affirmative defenses are to be pleaded.[12] The precise issue to be determined is whether this court should allow defendants to add that defense at this late stage of the proceedings.

The Eleventh Circuit has addressed on several occasions the issue of whether affirmative defenses in employment discrimination cases are waived when not asserted in a defendant's answer, even if the district court includes such defenses in the pretrial order. For example, in *Hargett v. Valley Federal Savings Bank*, 60 F.3d 754 (11th Cir. 1995), an ADEA case involving the affirmative defense of

---

[12] Fed. R. Civ. P. 8(c) provides in pertinent part that:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

the statute of limitations, the Eleventh Circuit allowed the defense even though it was not pled affirmatively, because it was raised at the pretrial conference, and included in the court's pretrial order.  The court noted that such action was justified because the plaintiff would not be "unreasonably surprised."  *Id.* at 763.

Similarly, in *Pulliam v. Tallapoosa County Jail*, 185 F.3d 1182 (11th Cir. 1999), the Eleventh Circuit found that, even though the defendant to a Title VII race discrimination claim had failed to raise a mixed motive affirmative defense in its initial pleadings, the defendant was not precluded from litigating that defense when it was included in the pretrial order.  The court found that the pretrial order gave the plaintiff adequate and fair notice of what issues would be brought out at trial and, hence, there was no "unfair surprise" in allowing the defense.  *Id.* at 1185; *see also Day v. Liberty National Life Ins. Co.*, 122 F.3d 1012, 1015-16 (11th Cir. 1997) (holding that a defendant can waive an affirmative defense by failing to ensure that the issue is clearly preserved in the pretrial order).  *But see, e.g., Jones v. Childers*, 18 F.3d 899, 909 (11th Cir. 1994) (holding that a district court did not abuse its discretion by refusing a defendant's request to add the

affirmative defense of failing to mitigate, where defendant made the request one week prior to the parties' pretrial conference, and four years after the filing of the original answer).

Trial courts outside the Eleventh Circuit also are given wide discretion in determining whether to allow a defendant to add an affirmative defense at a late stage of an ADEA action. For example, the Eighth Circuit found that a district court did not abuse its discretion when denying a defendant's motion to amend its answer, to add the claim of failure to mitigate as an affirmative defense to an ADEA claim, when it concluded that plaintiff would suffer "substantial prejudice" if the defense were allowed. *Sayre v. Musicland Group, Inc.*, 850 F.2d 350, 355 (8th Cir. 1988); *see also Grotke v. Canisius High School of Buffalo*, 1992 WL 535400 (W.D.N.Y.) (court allowed amendment to add failure to mitigate as a defense to an ADEA claim, after finding that the amendment would not "unduly prejudice" the plaintiff).

As the foregoing cases indicate, the issue of whether a plaintiff will be unduly prejudiced by the belated addition of an affirmative defense is the pivotal factor upon which such decisions turn.

In this case, defendants moved to amend their answer to

include the affirmative defense of failure to mitigate well over a year after the filing of their original answer, and then only after plaintiff brought her motion in limine, seeking to preclude defendants from offering evidence at trial of the reinstatement offer.

Moreover, the inclusion of such a defense at this late stage in the proceedings will work a substantial hardship on plaintiff. Pursuant to Local Rule LR83.1(f), the *Alabama Rules of Professional Conduct* govern the conduct of attorneys appearing before this court. Under the Alabama Rules, "a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," except where such testimony relates to uncontested issues, the nature and value of legal services, or the disqualification would work substantial hardship on the client. Rule 3.7, *Alabama Rules of Professional Conduct*. Even in those exceptional circumstances, the appearance of an attorney as both witness and advocate for a client is at best unseemly, and can prejudice the interests of that lawyer's client in the eyes of the jury, especially when the lawyer's testimony (as here) relates to a significant issue in the case.

Therefore, it is quite clear that, before the issue of failure

to mitigate damages could be presented to a jury, plaintiff's present attorney, as a necessary witness, should withdraw, and plaintiff then would be required to retain new counsel on the threshold of trial.

For the foregoing reasons, defendant's motion to reconsider is due to, and shall be denied. An appropriate order will be entered contemporaneously herewith.

DONE this 27th day of September, 2000.

_____
United States District Judge